Arthur E. Blyh, J.
The efforts to expand the jurisdiction of our courts continue unabated. The complexity of business dealings spanning so many States and even beyond our continental boundaries has resulted in a struggle by New York State, litigants to secure convenient forums for litigation.
This struggle has been reflected in the doing business in the State of New York concept and the broader statutory basis set by the enactment of CPLR 302 and, in this court, section 404 of the New York City Civil Court Act. Although all of the parties refer to the “ long arm ” statute (CPLR 302), it is better practice in this court to refer to section 404 of the CCA which is similar to section 302 but is tailored to fit the jurisdiction of the Civil Court of the City of New York.
Subdivision (a) of section 404 reads in pertinent part: “ 1. transacts any business within the city of New York; or 2. commits a tortious act within the city of New York ”.
The dispute before this court reflects this continuing effort to expand the dominion of our courts over nonresident parties. The defendant and third-party plaintiff LMC Data (hereinafter referred to as LMC) seeks to acquire jurisdiction over the third-party defendant Amelco Corporation (hereinafter referred to as Amelco). The matter came before this court on a traverse brought on by Amelco. The facts elicited at the hearing held in connection with the traverse were as follows: LMC is a New York corporation. Amelco is a Hawaiian corporation. Amelco and LMC entered into discussions and negotiations by telephone in connection with certain code translator equipment manufactured by LMC. Amelco was not interested in purchasing but did wish to lease such equipment. LMC then sold the equipment to the plaintiff, Hertz Commercial Leasing Corp. (hereinafter referred to as Hertz) and Hertz entered into a leasing agreement with Amelco covering this equipment. It was agreed that the other third-party defendant, Management Information Services, Inc. (hereafter referred to as MIS), a California-based *1011 corporation, but also with offices in Hawaii, would undertake the installation of the equipment.
The lease, prepared by Hertz and mailed to Amelco, was signed by Amelco in Hawaii and was mailed back to Hertz in New York for signature by Hertz. There is no disagreement as to the fact that Amelco was never present in New York in any manner; tha,t all contacts with New York were by telephone and mail. The \ equipment was shipped from New York to Hawaii.
The dispute which gave rise to this litigation is that Hertz paid LMC for the equipment but that Amelco claimed that it never received the equipment and refused to make payments to Hertz under the leasing agreement.
Hertz sued LMC and LMC brought in Amelco and MIS as third-party defendants,
LMC rests its claim that the court has jurisdiction over Amelco on two grounds:
1. That Amelco transacted business in New York (CPLR 302, subd. [a], par. 1 or CCA, § 404, subd. [a], par. 1).
2. That Amelco committed a tortious act within New York State (CPLR 302, subd. (a) or CCA § 404, subd. [a]).
As to the first ground, LMC relies upon the fact that the leasing agreement between Hertz and Amelco required that, after it was signed by Amelco in Hawaii, it had to be mailed back to Hertz in New York for signature and acceptance and that, further, one of the terms of the leasing agreement stated in fine print on the reverse side of that agreement in paragraph “ 17 ” (the last paragraph on a page of fine and closely set print): “ This lease is made in the State of New York and shall be governed by and interpreted under the laws of the State of New York.” LMC relies upon such cases as Iroquois Gas Corp. v. Collins (42 Misc 2d 632, affd. 23 A D 2d 823), Hoard v. U. S. Paint Lacquer & Chem. Co. (44 Misc 2d 72), and Patrick Ellam, Inc. v. Nieves (41 Misc 2d 186), amongst others.
In the Iroquois case it was clear that the defendant nonresident sent a number of its employees and agents into New York State in connection with thé underlying contract which had been executed in New York by virtue of an acceptance of defendant’s letter received in New York. This distinguishes Iroquois from the case at bar.
In the Hoard case the reference to the “ last act to complete the contract ” is based on Fremay, Inc. v. Modern Plastic Mach. Corp. (15 A D 2d 235), which was a pre-CPLR 302 case and had to rely on the doing business in New York State concept and *1012 on William Jump v. Duplex Fending Corp. (41 Misc 2d 950), which does not, in the opinion of this court, support LMC’s position, and, as a matter of fact, refers to the opinion of Mr. Chief Justice Warren in Hanson v. Denckla (357 U. S. 235, 251) in which he said “ It is a mistake to assume that this trend heralds the eventual demise of all restrictions on the personal jurisdiction of state courts.”
The Ellam (41 Misc 2d 186, supra) case is not at all clear as to whether the defendants were physically present within the State of New York when the agreement to furnish a crew to deliver defendant’s vessel, which apparently was in New York at the time of the agreement, to St. Thomas.
Amelco resists jurisdiction, denying that it ‘ ‘ transacted business within New York State ’ ’, citing Hanson v. Denckla (supra); Longines-Wittnauer Watch Co. v. Barnes & Reinecke (15 N Y 2d 443), Friedr Zoellner Corp. v. Tex Metals Co. (396 F. 2d 300), Bankers Commercial Corp. v. Alto, Inc. (30 A D 2d 517), amongst others.
This court agrees with the reasoning set forth in the line of cases cited by Amelco, and rejects the contention of LMC that it has jurisdiction over Amelco by virtue of the fact that the lease agreement with Hertz was completed by signature of Hertz in New York.
The court will now deal with the second thrust of LMC in its efforts to establish jurisdiction over Amelco. LMC takes the position that, by reason of allegations contained in the complaint of Hertz in its suit against LMC that “ LMC obtained payment for the equipment by means of fraudulent misrepresentations,” an action in tort was pleaded. Although LMC denied this allegation in its answer, it alleged in its third-party complaint that it ‘1 followed the instructions of Amelco * * * and that if
recovery is had against it, then LMC seeks a transfer of liability against both third-party defendants ” (one -of which was Amelco). Thus, in effect, LMC is relying upon the alleged tort, a tort claimed to have been committed by Amelco within New York State, as a basis for its claim that the court has jurisdiction by virtue of paragraph 2 of subdivision (a) of CPLR 302 or paragraph 2 of subdivision (a) of section 404 of the OCA, which afford jurisdiction over nonresidents when a nonresident “ commits a tortious act within the ¡state ”.
LMC argues the theory of the Hoard case. The first problem for LMC in that case is that at the time that the issue of jurisdiction was raised no answer had been interposed, thus leaving the allegation of fraud and misrepresentation uncontroverted. *1013 In the within case such allegation was not only denied, but denied by LMC which then seeks to utilize the allegation of fraud and misrepresentation for its own purposes. Amelco in turn denied such allegation.
The cause of action between Hertz and LMC sounds in contract despite the language set forth in the second cause of action which included all of the allegations of the first cause of action pleading breach of contract and adding the general allegation of fraud and misrepresentation.
Forms of action and procedural distinctions based upon them now have much less importaneé. Nevertheless when a statute (CPLE 302, subd. [a], par. 2 or CCA, § 404, subd. [a], par. 2) makes a distinction between tort and contract and substantial consequences flow from the characterization of á case as one or the other, then courts have no right to treat the terms interchangeably. If a party could simply, by alleging that a contracting party never intended to fulfill his promise, create a tortious action in fraud, there would be no effective way of preventing almost every contract case from being converted to a tort for jurisdictional purposes. Accepting LMC’s theory would have the effect of an unwarranted and unintended extension of the “ long arm ” jurisdiction to almost any contract action where the plaintiff was a New York resident. (Stanat Mfg. Co. v. Imperial Metal Finishing Co., 325 F. Supp. 794.)
While it is clear that, under the constitutional due process principle, the Legislature can today broaden the classes of actions in which a nonresident corporation may be sued locally, and the Legislature has done so in CPLE 302 and section 404 of the CCA, it is also clear that in a commercial and business community such as New York City the economic impact of any extension of such jurisdiction must be carefully weighed and the limitation on such broadened jurisdiction should not be blithely disregarded.
To repeat the language of Hanson v. Denckla (357 U. S. 235) “ it is a mistake to assume that this trend (such as CPLR 302) heralds the eventual demise of all restrictions on the personal jurisdiction of state courts.” (Italics added).
The court therefore sustains the traverse and dismisses the third-party complaint as to the third-party defendant Amelco.