Dye, J.
The plaintiff, a licensed real estate broker, brought this action in the City Court of Mount Vernon, Westchester County, N. Y., to recover a broker’s commission of which he, allegedly, had been deprived by reason of a conspiracy among the named defendants — Esbar Realty Corp. (hereinafter Esbar), Philip Yablon, its principal officer and sole stockholder, and Samuel Fisher, the broker who actually consummated the sale to Esbar.
Upon appeal from the judgment rendered in favor of the plaintiff against all the defendants, the Appellate Division modified by reversing so much thereof as was against the defendant Fisher, severed the action and dismissed the complaint as to him on the ground that the proof failed to establish that Fisher knew of plaintiff’s rights or conspired to violate them. The judgment, insofar as it was against the defendants Esbar and Yablon, was modified.
On this appeal, we treat the action as did both the trial court and the court below as being founded in conspiracy, although the respondent now urges that the gravamen of the complaint is that appellants, by théir acts, deprived the plaintiff of a real estate commission because the conspiracy mentioned in the complaint has reference merely to tie the acts of the defendants together.
The controversy had its genesis in the following circumstances : In July of 1953, the Glennon Realty Corp. (hereinafter Glennon) was the owner of premises located at the northeast corner of Prospect and Crary Avenues, Mount Vernon, N. Y., in which Yablon was a tenant. The latter, learning; "hat the premises had been or were about to be listed for sale, contacted a real estate • broker named Thill and asked him to look into the matter without revealing that he was interested. Thill communicated with Glennon and was thereafter employed under *305 a nonexclusive listing to provide a purchaser at the usual rate of commission. Tablón considered the listing price too high. During these times the plaintiff, a brother-in-law of Thill, was attached to his office as a salesman. Later and on Decembér 3, 1953 the plaintiff received his license as a real estate broker and in the same month succeeded to Thill’s real estate business. Thereafter plaintiff made interim attempts to work out a deal between Glennon and Tablón. Finally in April, 1955 Glennon reduced the price to $90,000 net. Plaintiff, however, did not quote that price to Tablón but, instead, quoted a price of $94,750 which he said included his commission. Tablón, allegedly, was willing to pay the quoted price provided plaintiff refunded to him $2,750 from the amount he was to receive as commission (all of which Tablón categorically denied) which proposition plaintiff refused to accept. Negotiations between them broke off. At about the same time Tablón purchased the premises in the name of his wholly owned corporation Esbar (which had been incorporated for that purpose) for the sum of $92,000 through Fisher acting as broker, to whom the seller paid a commission of $500. There was no showing that Glennon knew that Fisher was acting for the same principal as the plaintiff, or that Fisher knew about the plaintiff’s prior efforts in Tablon’s behalf. The dismissal of the conspiracy charge against Fisher—which on the proof in this record was eminently proper—left only the vendee corporation Esbar and its sole stockholder Tablón as parties to the conspiracy. In such a situation a dismissal should also have included the latter since it is well established that a conspiracy depends upon a combination of two or more persons intentionally participating in the furtherance of a preconceived scheme or design (Pinkerton v. United States, 151 F. 2d 499, affd. 328 U. S. 640). While it is entirely possible for an individual and a corporation to conspire, it is basic that the persons and entities must be separate (Nelson Radio & Supply Co. v. Motorola, 200 F. 911, cert, denied 345 U. S. 925).
In the instant case, it is conceded that Esbar was formed for the sole purpose of taking title to the property from Glennon. To say such a relationship affords a basis for a conspiracy is much the same as saying an individual or a corporation can conspire with himself or itself. This cannot be done and a complaint so drawn is legally insufficient (Moskowits v. Feuer, *306 265 App. Div. 884, affd. 291 N. Y. 568; Greyhound Corp. v. Commercial Cas. Co., 259 App. Div. 317; Potter v. Minskoff, 2 A D 2d 513). Furthermore, it is a long-established doctrine that one does not have a cause of action against another contracting party for conspiracy to breach the agreement between them (Miller v. Vanderlip, 285 N. Y. 116).
On the other hand, if we accept the plaintiff’s revised theory that his deprivation of commission was not the result of conspiracy but rather because of the acts of the defendants Esbar and Yablon, he, nonetheless, may not recover. Nowhere has he shown that he succeeded in bringing the parties together on a mutually acceptable price, terms and conditions of sale. Until he did so, no commissions had been earned (Sibbald v. Bethlehem Iron Co., 83 N. Y. 378; Saum v. Capital Realty Development Corp., 268 N. Y. 335). The proof is that he never divulged to the buyer the net price and terms on which the seller was willing to sell, but took it upon himself to quote a higher and different price which included an arbitrary sum for alleged commissions. In so manipulating the price he made it impossible to bring the minds of the parties together on a common ground and thus, by his own conduct, prevented a sale of the property. In seeking to take advantage of Yablon’s desire and need for the property and the seller’s willingness to sell at a greatly reduced price he violated a fundamental of fiduciary relationship both as to the seller and buyer whose name he never revealed (Wechsler v. Bowman, 285 N. Y. 284; Lamdin v. Broadway Surface Adv. Corp., 272 N. Y. 133; Elco Shoe Mfrs. v. Sisk, 260 N. Y. 100).
The judgment should be reversed and the amended complaint dismissed, with costs in all courts.
Chief Judge Conway and Judges Desmond, Fttld, Fboessel and Van Voorhis concur with Judge Dye ; Judge Burke dissents and votes to affirm.
Judgment reversed, etc.